UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION


_____  )
                                )
UNITED STATES OF AMERICA,        )
                                )
            vs.                  )CASE NO. 5:18-CR-502-D-1
                                )
                                )
WILLIAM TREVOR SOLOFF,           )
                                )
            Defendant.           )
_____  )


THURSDAY, JANUARY 24, 2019
ARRAIGNMENT PLEA AND DETENTION HEARING
BEFORE THE HONORABLE JAMES E. GATES
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

On Behalf of the Government:

DANIEL S. SMITH, Assistant U.S. Attorney
U.S. Attorney's Office
150 Fayetteville Street, Suite 800
Raleigh, North Carolina  27601

On Behalf of the Defendant:

CHRISTOPHER M. YOUNG  Esquire
The Young Law Firm, PLLC
1629 K Street NW, Suite 300
Washington, D.C. 20006


MICHELLE A. McGIRR, RPR, CRR, CRC
Official Court Reporter
United States District Court
Raleigh, North Carolina

I N D E X

**WITNESS:**

       Tanya Faye Stockton

**EXAMINATION:**                                                    **PAGE**

      Direct Examination by Mr. Young       52
      Cross-Examination by Mr. Smith        53
      Redirect Examination by Mr. Young    64

\*   \*   \*

1        (Thursday, January 24, 2019 commencing at 10:36 a.m.)

2                        **P R O C E E D I N G S**

3

4          THE COURT:  Good mornings, folks.

5          We're here today in the United States District

6    Court for the Eastern District of North Carolina sitting in

7    Raleigh for the purpose of arraignments.

8          In a moment, we'll have the calendar call.  I just

9    wanted to check in on a couple of cases with respect to the

10   penalty sheets.  And one of these -- well, the two cases

11   are -- well, one is the Hargrove case -- has an amended

12   penalty sheet -- there was a minor problem with the penalty

13   sheet in that case.

14         Mr. Smith, sir, has that --

15         MR. SMITH:  Yes, your Honor.  There was a new

16   penalty sheet filed this morning.

17         THE COURT:  Very good.

18         Okay.  And in the Soloff matter, has that been

19   taken care of as well?

20         MR. SMITH:  Yes, your Honor.

21         THE COURT:  Okay.  Very well.  Thank you.

22         Very well.  In a moment, the Court will have the

23   clerk call the calendar to determine whether all defendants

24   and their attorneys are present.  I would ask each attorney

25   to identify himself or herself and state whether his or her

1    client is present in the courtroom.

2            If a defendant does not have an attorney or if the

3    defendant's attorney is not present, then the defendant

4    should answer when his name is called.

5            After the calendar is called, defendants and their

6    attorneys, please, if you would, remain in the courtroom so

7    that the Court can explain to each of the defendants his

8    right to a jury trial and the consequences of pleading

9    guilty.

10           After the Court completes this explanation, then

11   each defendant will be sworn and questioned individually

12   under oath before the Court's acceptance of the guilty plea.

13   The defendant will be asked if he understands his rights

14   under the Constitution and laws of the United States; and if

15   the defendant does not, then the Court will explain such

16   rights again.  The defendant may confer with his counsel

17   before answering any of the Court's questions.

18           Additionally, when each defendant's case is called,

19   I would request that counsel for the government handling that

20   case indicate whether the case involves a crime victim and

21   whether any crime victim is present or wishes to be heard.

22           My understanding is that the defendants who are

23   present today all wish to plead guilty.  If that's not the

24   case, I would ask defense counsel to so indicate.

25           Madam clerk, would you please call the calendar.

1          (Whereupon the Clerk called the calendar)

2        (Whereupon other matters were heard by the Court)

3          THE CLERK:  United States versus William Trevor

4    Soloff.

5          MR. YOUNG:  Good morning, your Honor.  Christopher

6    Young for Mr. Soloff.  He's here and ready to proceed.

7        (Whereupon other matters were heard by the Court)

8          THE COURT:  Very good.  Thank you, ma'am.

9          Very well.  Let me now address the defendants.

10          Gentlemen, I would ask each of to you pay close

11    attention to what the Court is about to say.  It will be an

12    important part of each of your cases and I would ask each of

13    you -- I will be asking each of you if you have heard and

14    understood the Court's comments.

15          I now advise each of you gentlemen as follows:  If

16    you are accused of a felony -- and I believe you are charged

17    with felony offenses, that is, offenses punishable by a term

18    of incarceration exceeding one year -- you have the

19    constitutional right to be charged by indictment by a Grand

20    Jury.  Unless you waive indictment, you may not be tried in

21    Federal Court for a felony.

22          To be indicted by a Grand Jury, the Grand Jury must

23    find that there is probable cause to believe that you

24    committed the charged crime.  A Grand Jury consists of 16 to

25    23 persons and at least 12 Grand Jurors must find that there

1   is probable cause to believe that you committed the charged
2   crime before you may be indicted.

3           However, you may waive the right to Grand Jury
4   indictment and consent to being charged by an information
5   filed by the United States Attorney.  If you do not waive
6   indictment, the Government may present the case to the Grand
7   Jury and ask the Grand Jury to indict you.  The Grand Jury
8   might or might not do so.  If you waive Grand Jury
9   indictment, the case will proceed against you based on the
10  United States Attorney's information just as though you had
11  been indicted.

12          Now, I believe all of you have been charged by way
13  of indictment with two exceptions -- and that is, Mr.
14  Hargrove, you had originally been charged by way of an
15  indictment -- well, certainly by a superseding indictment --
16  but an information has now been filed in your case which
17  would take the place of the superseding indictment.

18          And then, Mr. Soloff, sir, the sole charging
19  document in your case is a criminal information.

20          The rest of you gentleman though are here pursuant
21  to charges in an indictment.

22          Now, in addition to the right to be charged by an
23  indictment, the Constitution and laws of the United States
24  give you the right to plead not guilty and to have a jury
25  trial with respect to all charges against you.

1        In that regard, you should consider the following:

2   First, at a jury trial, you would be presumed innocent.  The

3   Government would be required to prove your guilt by competent

4   evidence and beyond a reasonable doubt before you could be

5   found guilty.  You would not have to prove that you were

6   innocent.

7        Second, at a trial, witnesses for the Government

8   would have to come to court and testify in your presence.

9   Your lawyer could cross-examine those witnesses, that is, ask

10  questions of them, object to evidence offered by the

11  Government and offer evidence on your behalf.

12       Third, at a trial you would have the right to use

13  the subpoena power of the Court to make witnesses come to

14  court on your behalf whether they wanted to come or not.

15  What that means is that you would have the right to have the

16  court issue orders called subpoenas directing witnesses to

17  come to trial so that they could testify on your behalf.

18       Fourth, at a trial you would have the right to

19  testify if you chose to do so, but you would also have the

20  right not to testify; that is, the right to remain silent

21  also known as the right against self-incrimination.  Nobody

22  can require you to answer any questions or make any

23  statements about the charges facing you.  If you have already

24  made a statement about the charges, you do not need to say

25  anymore.  If you start to make a statement, you may stop at

1  any time.  This right to remain silent can be waived.  And if
2  you do waive the right to remain silent, then anything you
3  say may be used against you.
4          And if at trial you chose not to testify, the Court
5  would expressly tell the jury that no inference or suggestion
6  of guilt could be drawn from your decision not to testify.
7          Fifth, you have the right to be represented by
8  counsel at trial and at every other stage of the proceeding.
9  You may consult with an attorney before questioning may occur
10 in any proceeding.
11         Now, you notice I've used the term counsel and
12 attorney here.  I may also along the way use the term lawyer.
13 All of those terms mean the same thing -- lawyer, attorney,
14 counsel -- and, of course, refer to a person's legal
15 representative.
16         Now if you are unable to afford counsel, you also
17 have the right to have the court appoint counsel to represent
18 you at trial and at every other stage of the proceeding
19 without cost.  Whether you plead guilty or not guilty will
20 not affect whether you have a lawyer in this court.  If you
21 want a lawyer to represent you in your case here, you will
22 have a lawyer.
23         Now if you plead guilty, you will waive your right
24 to a jury trial and these other trial rights.  Instead of a
25 trial, you will be judged guilty and you will be sentenced on

the basis of your guilty plea after the Court considers the

factors listed in Title 18 of the United States Code, Section

3553(a), and considers the now-advisory Federal Sentencing

Guidelines.

　　　　If you have reached a plea agreement with the

Government, the Court is obligated to examine carefully any

such plea agreement to be sure that the agreement conforms to

the objectives of sentencing, including imposing a sentence

within the parameters of your statute of conviction that is

appropriate to the seriousness of your actual offense

behavior as well as your past criminal conduct.  The Court

will evaluate such behavior and conduct only after it

receives a detailed pre-sentence report from the United

States Probation Office.

　　　　If you have reached a plea agreement with the

government, you should also realize that the Court is not a

party to that agreement.  Such agreements are negotiated

solely between you, your lawyer and the lawyer for the

government.  You are advised that any stipulations contained

in your plea agreement are not binding on the Court.  Rather,

the Court will make an independent determination as to your

sentence after applying all the sentencing factors to your

case and considering all arguments of counsel, your

statement, the advisory guideline range and any departure or

variance motions.

1       Now more specifically, the standards of acceptance

2   of plea agreements include those stated in Rule 11 of the

3   Federal Rules of Criminal Procedure, which provides in part

4   as follows:  In one type of a plea agreement, the government

5   recommends to the Court, or agrees not to oppose the

6   defendant's request to the Court, that a particular sentence

7   or sentencing range is appropriate or that a particular

8   provision of the sentencing Guidelines does or does not

9   apply.

10      If a plea agreement is of this type, if the Court

11  accepts the agreement, the recommendation or request is not

12  binding on the Court.  If the Court does not follow the

13  recommendation or request, the defendant has no right to

14  withdraw his guilty plea.

15      On the other hand, there may be plea agreements in

16  which the Government agrees not to bring or will move to

17  dismiss other charges or in which the government agrees that

18  a specific sentence or sentencing range is the appropriate

19  disposition of the case or that a particular provision of the

20  sentencing guidelines does or does not apply.

21      If a plea agreement is of this type, if the Court

22  accepts the agreement, then the parties agreed-upon terms are

23  binding on the Court and the agreed-upon disposition will be

24  included in the judgment unless the plea agreement provides

25  otherwise.  However, if the Court does not accept this type

of plea agreement, where there is a binding, agreed-upon disposition between the parties, then the defendant will be given an opportunity to withdraw his plea.

If the defendant does not withdraw the plea, however, the Court is not required to follow the plea agreement and may dispose of the case less favorably than the plea agreement had provided.

Now, a plea of guilty has the following additional consequences. First, you will have to waive your right not to incriminate yourself because the Court will ask you questions about what you did in order to be sure that you are guilty as charged and you will have to admit your guilt.

Second, the Court may impose the same punishment as if you had pleaded not guilty and had been convicted by a jury.

Third, if you are on probation or parole in another case, in this or another court, by pleading guilty here your probation or parole in that other case may be revoked and you may be required to serve time in that other case in addition to any sentence imposed upon you as a result of your guilty plea here.

Fourth, in addition to any sentence imposed, your plea of guilty to a felony may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess

any kind of firearm.

Moreover, if you are not a citizen of the United States, and you are convicted of a felony, you may be removed from the United States, denied citizenship in the United States and denied admission to the United States in the future.

Furthermore, if you are ordered imprisoned due to your felony conviction, removal from the United States takes place after imprisonment.

Now, additionally as to all defendants, unless otherwise advised, you will be assessed per count a sum that is per crime charged -- meaning per count -- a sum of not less than $100. That sum is called a special assessment, it's in the nature of the fee. And any fine imposed will bear interest.

Further, if you are convicted of a sex offense you will likely be subject to substantial future restrictions on where you may live or work and with whom you may associate.

Fifth, in some cases, obligations in addition to a sentence of imprisonment and/or a fine may be imposed. For example, you may be ordered to make restitution in the form of money to the victims of your offenses or you may be required to forfeit certain property to the Government. Or in the case of offenses involving fraud, you may be ordered to provide notice of your conviction to the victims of your

1    offenses.

2         Additionally, in most cases, you will be given a

3    term of supervised release in addition to a term of

4    imprisonment.  The term of supervised release follows

5    imprisonment and can range from one year up to life based

6    upon your criminal history and the offense or offenses for

7    which you are convicted.

8         Such release is conditioned upon your noncommission

9    of another federal, state or local crime and such other

10   conditions as may be appropriate.  If you violate the

11   conditions of supervised release, you may be subject to

12   further imprisonment.

13        Now cases in which guilty pleas are tendered and

14   accepted today are set for sentencing at the April 29, 2019,

15   session of court here in Raleigh in this courtroom, Courtroom

16   1, on the seventh floor of the Terry Sanford Federal Building

17   and Courthouse beginning at 9 a.m.

18        Regardless of the advisory sentencing guideline

19   ultimately found to be appropriate to your case, you may not

20   withdraw a guilty plea tendered and accepted today.

21        Between now and the sentencing date just announced,

22   the probation office will prepare a detailed, written,

23   pre-sentence report.  It is very important that the

24   pre-sentence report be complete and accurate.  The

25   pre-sentence report will be an important tool to aid the

Court in determining your sentence.  You and your lawyer may give information for the pre-sentence report.  You and your lawyer will be furnished a copy of the pre-sentence report and you will have an opportunity to timely comment upon it. Examine the pre-sentence report carefully.  Within 14 days after receiving the pre-sentence report, you and your lawyer must file with the Court, and serve on the probation officer, objections in writing to any information that is contained in or omitted from the report.  The court will not consider any dispute which has not been the subject of such written communication.

Furthermore, the Court will consider and resolve only issues relevant to disputed sentencing factors previously stated in writing and additionally brought to its attention by you or your lawyer at the time of sentencing.

At sentencing you should advise the Court orally if you have any objection to any matter contained in or omitted from the pre-sentence report that your attorney has failed to raise.  Contentions not stated by you or your lawyer will be deemed abandoned.

If you do not challenge the validity of any prior convictions before imposition of your sentence, you will be barred from contesting those convictions at a later date.  In short, if you do not contest the facts set forth in the pre-sentence report, the Court may accept those facts,

1    including any prior convictions, as correct and may rely upon

2    them in determining your sentence.

3            Note that if there are any victims of the offenses

4    for which you are sentenced, these victims will be given the

5    opportunity to be heard at the sentencing hearing as, of

6    course, will the government.

7            You, or your lawyer on your behalf, may submit

8    written memoranda, motions or other materials such as

9    character letters before the sentencing hearing.  The

10   government may do so as well.  Either party must submit any

11   such material to the Court in Raleigh at least seven days

12   before the sentencing hearing.

13           Now after you are sentenced, the government is

14   limited in most instances to one year within which to move

15   for a reduction in your sentence pursuant to Rule 35(b) by

16   reason of assistance rendered by you to the government.  The

17   government is not required to return to court with a Rule

18   35(b) motion to seek a reduction and it is completely within

19   the government's discretion whether to do so.  If the

20   government decides not to make a Rule 35(b) motion on your

21   behalf, you are entitled to relief from the Court in only a

22   very few exceptional circumstances.  At sentencing you should

23   advise the Court whether the government has made

24   representations to you or your attorney that your future

25   cooperation might result in a Rule 35(b) motion.

1    If the government does make a Rule 35(b) motion to

2 seek a reduction in your sentence by virtue of your

3 assistance, the making of such motion will not extend, toll

4 or modify the one-year time for your filing a

5 post-conviction, Section 2255 motion to vacate, set aside or

6 correct your sentence.

7    Furthermore, the United States Attorney cannot

8 promise you that the Court will grant a Rule 35(b) motion nor

9 can the United States Attorney promise you that law

10 enforcement officers either will accept or act upon your

11 offers of cooperation.

12    If you are convicted, whether by a jury or as a

13 result of a guilty plea, you can appeal such conviction if

14 you believe that your conviction was somehow unlawful or if

15 there is some other fundamental defect in the proceeding that

16 was not waived by your guilty plea.  You also have a

17 statutory right to appeal your sentence under certain

18 circumstances, particularly if you think the sentence is

19 contrary to law.  However, you may agree to waive certain

20 appeal rights, both as to your conviction and sentence, in a

21 plea agreement.

22    When we discuss your individual plea we will go

23 over any such appeal waiver in your plea agreement.  Such

24 appeal waiver is generally unenforceable, but if you believe

25 the waiver is unenforceable or inapplicable, you can present

that theory to the Appellate Court.  With few exceptions any
notice of appeal must be filed within 14 days of the judgment
being entered against you -- being entered against you in
your case.

If you are unable to pay the cost of an appeal, you
may apply for leave to appeal *in forma pauperis*.  If you so
request, the clerk of court will prepare and file a notice of
appeal on your behalf.

Gentlemen, I have now concluded those comments to
you as a group and I do want to ask you as a group certain
questions to you and your counsel.  So I would ask you to
please listen carefully to these questions.

Your answers, again, constitute an important part
of the record of your plea; and if you wish to answer yes to
any of my questions, please raise your hand and then when
called upon, address the Court orally.

I would ask counsel, of course, to take note of
their client's responses.

I want to begin by directing several questions to
Mr. Hargrove and Mr. Soloff because you have both been
charged by way of criminal informations as I noted -- at
least those are the current manner by which you've been
charged.

So I'm going to ask you:  Have either of you not
discussed the matter of waiving your right to indictment by

the Grand Jury with your attorney?  Have either of you not
discussed that?

                              (No hands raised)

          THE COURT:  Do either of you not understand your
right to indictment by Grand Jury?

                              (No hands raised)

          THE COURT:  Have either of you been induced to
waive indictment by reason of any threat or promise?  And I
would say any promise beyond what is included in the plea
agreement.

                              (No hands raised)

          THE COURT:  Is there any attorney present
representing -- let me put it this way, the attorneys
representing these two defendants -- who sees any reason why
their respective clients should not waive indictment?

                              (No hands raised)

          THE COURT:  Very well.  Let me note for the record
no defendant or attorney raised his or her hand in response
to any of these questions.

          Now let me address another set of question to all
the defendants and I'm speaking to all of you gentlemen now.

          As to all of you is there any defendant who has
taken any drugs, medicine, pills or drunk any alcoholic
beverages in the past 24 hours?

                              (No hands raised)

1    THE COURT:  Do any of you not understand what is

2  happening here today?

3                        (No hands raised)

4    THE COURT:  Is there any attorney representing a

5  defendant who has any doubts or questions about his or her

6  client's competence to plead at this time?

7                        (No hands raised)

8    THE COURT:  Speaking again to the defendants, are

9  there any of you gentlemen who have not received a copy of

10  the indictment or the information against you?

11                        (No hands raised)

12    THE COURT:  Have any of you not discussed your case

13  with your attorney?

14                        (No hands raised)

15    THE COURT:  Are any of you not completely and fully

16  satisfied with your attorney's legal services?

17                        (No hands raised)

18    THE COURT:  Do any of you need or wish to have the

19  indictment or information read to you for any reason?

20                        (No hands raised)

21    THE COURT:  Do any of you have any questions about

22  your rights to a jury trial or the other rights relating

23  thereto or the consequences of pleading guilty that I have

24  just explained?

25                        (No hands raised)

1          THE COURT:  Let me note that no person raised his

2    or her hand in response to any of this last set of questions

3    to the defendants as a group and their counsel.

4          So, gentlemen, I have just concluded explaining

5    each defendant's right to a jury trial, the other rights

6    relating thereto and the Court will now consider each case on

7    the calendar individually.

8          And it is my intention to proceed through these

9    cases as listed on the calendar.  There may be one possible

10   exception to the extent a detention hearing is necessary and

11   I don't know that yet in Mr. Soloff's case.  We may move that

12   to the end of the calendar; but with that one caveat, absent

13   some scheduling issue that counsel has, my intention is to

14   work our way through the calendar as listed.

15         (Whereupon the Court heard other matters)

16         THE COURT:  We'll take a recess until about 12:30

17   and then pick up with Mr. Soloff's case.

18              (Brief recess at 12:23 p.m. to 12:55 p.m.)

19                        (Open Court)

20         THE COURT:  We'll proceed next with the Soloff

21   matter.

22         This is the case of United States versus William

23   Trevor Soloff.

24         Madam clerk, would you please swear the defendant.

25    (The defendant, William Trevor Soloff, sworn by the clerk)

1        THE DEFENDANT:  Yes, I do.

2        THE CLERK:  Thank you, sir.

3        THE COURT:  Mr. Soloff, sir, one moment.

4            (The Court perusing documents)

5        THE COURT:  Sir, do you understand that having been

6    sworn, your answers to my questions are subject to the

7    penalties of perjury or of making a false statement if you do

8    not answer truthfully?

9        THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  Sir, do you understand that you have

11   the right to have a United States District Judge conduct this

12   proceeding?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  And have you conferred with your

15   counsel about your right to proceed before a United States

16   District Judge?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  Recognizing your right to proceed

19   before a District Judge, do you expressly consent to proceed

20   before me as a United States Magistrate Judge?

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  Sir, I do have a form in front of me

23   entitled consent to proceed before a United States Magistrate

24   Judge.  Sir, did you sign this form after reviewing it with

25   your counsel?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  And you understand this form, sir?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  This form states in part, I hereby

5    waive my right to arraignment before a United States District

6    Judge and, therefore, consent to proceed before a United

7    States Magistrate Judge for purposes of arraignment pursuant

8    to Rule 10 of the Federal Rules of Criminal Procedure and

9    entering a plea pursuant to Rule 11 of the Federal Rules of

10   Criminal Procedure.

11          Sir, do you understand that provision?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  And do you agree to it?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Very well.  I find that Mr. Soloff's

16   consent to Magistrate Judge jurisdiction is knowingly and

17   voluntarily provided.  I will accept it on behalf of the

18   Court.

19          Sir, I do need to ask you a brief series of

20   questions to satisfy myself that you are competent in the

21   eyes of the law to plead today.

22          Sir, how old are you?

23          THE DEFENDANT:  52.

24          THE COURT:  52.  And how far did you go in school?

25          THE DEFENDANT:  Bachelor's degree.

```
 1          THE COURT:  And are you currently or have you

 2   recently been under the care of a physician, psychologist,

 3   psychiatrist or other healthcare provider?

 4          THE DEFENDANT:  Yes, Your Honor.

 5          THE COURT:  Now, again my focus is on your

 6   competency to plead today.  With that focus in mind, explain

 7   to me a bit more about this care that you've either currently

 8   or recently been under.

 9          THE DEFENDANT:  I see a therapist weekly for

10   addiction, sex addiction, and I went to a 45-day treatment

11   center for sex addiction.

12          THE COURT:  I see.  Is there anything about that

13   treatment that would impair your ability to understand what

14   is happening today or to make important decisions?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  Okay.  Sir, have you ever been

17   hospitalized or treated for any type of addiction other than

18   what you've just mentioned?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Sir, have you taken any drugs, medicine

21   or pills or drunk any alcoholic beverage in the past

22   24 hours?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Tell me about that, sir.

25          THE DEFENDANT:  One drink at dinner with my family.
```

1        THE COURT:  I see.  That was last evening?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Okay.  And I assume that that's not

4   having any influence at all at this point on you, correct?

5        THE DEFENDANT:  No.

6        THE COURT:  Very well.  Sir, do you understand what

7   is happening here today?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Very good.

10       Mr. Young, do you believe that Mr. Soloff is

11  competent to plead today?

12       MR. YOUNG:  Yes, your Honor.

13       THE COURT:  Very good, sir.

14       Mr. Smith, do you share that opinion?

15       MR. SMITH:  Yes, your Honor.

16       THE COURT:  Very well.

17       Let the record reflect that based on prior

18  questions to the defendant and his counsel, the Court's

19  observation of the defendant and the answers from counsel and

20  defendant, the Court finds that the defendant is competent to

21  plead.

22       Now let me inquire of you, Mr. Smith, does the

23  offense charged against Mr. Soloff in the criminal

24  information involve a crime victim as defined in 18 U.S.C.,

25  Section 3771(e)?

1          MR. SMITH:  Yes, your Honor.  And there are no

2    crime victims present in the courtroom at this time.

3          THE COURT:  Okay.  Very well.  Thank you, sir.

4          And, Mr. Young, sir, I'm assuming that Mr. Soloff

5    is a United States citizen; is that correct?

6          MR. YOUNG:  Yes, your Honor.

7          THE COURT:  Very good.

8          Mr. Soloff, sir, I'm now going to inform you of the

9    nature of the charge against you and the criminal information

10   and advise you of the maximum penalty and any mandatory

11   minimum penalty applicable to that charge.  Since you have

12   indicated an intention to plead guilty, sir, the Court will

13   ask you additional questions to be sure that your guilty plea

14   derives from your own free will and has a factual basis; and

15   to determine whether the Court, in its discretion, should

16   accept your guilty plea.

17         You are charged, sir, in a criminal information.

18   That's the only charging document in your case.  There is not

19   a prior one.  And, of course, the criminal information is a

20   charging document that is issued directly by the prosecutor,

21   that is, the United States Attorney.

22         The criminal information here states as follows:

23   That the United States Attorney charges that on or about

24   May 19th of 2017 in this district, you, the defendant, did

25   knowingly receive a visual depiction, that is, a digital and

computer image file, identified as \840G3\Unsee - Free online private photos sharing 45_files\a_004.jpg, that have been shipped and transported in interstate and foreign commerce by any means, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction is of such conduct, in violation of Title 18, United States Code, Section 2255(a)(2).

Sir, do you understand that charge against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And let me review then, sir, the penalties, the maximum penalties, that can be imposed upon you with respect to that charge.

The law provides for a maximum term of imprisonment of 20 years, a minimum term of imprisonment of five years.  A maximum term of supervised release of up to life and a minimum term of five years.  A maximum term of imprisonment upon revocation of supervised release up to life.  A maximum fine of $250,000.  Restitution, if applicable, and as agreed to in this plea agreement.  There is a special assessment of $100 and also forfeiture, which we'll review.  There is a forfeiture notice included with the information, which I'll go over in a moment.

Now, sir, if you are found to have a prior conviction under 18, United States Code, Section 1591,

Chapters 71, 109A, 110 or 117 of the United States Code or
Title 10 of the United States Code, Section 920, or prior
conviction under the laws of any state relating to aggravated
sexual abuse, sexual abuse, abusive sexual conduct involving
a minor or sex trafficking of children or the production,
possession, receipt, mailing, sale, distribution, shipment or
transportation of child pornography, then the applicable
penalties in lieu of the maximum term of incarceration and
then the provisions regarding supervised release become as
follows:  The maximum term of imprisonment increases to 40
years, the minimum term of imprisonment is 15 years.  The
maximum term of supervised release is up to life with a
minimum of five years and the maximum term of imprisonment
upon revocation of supervised release is life.  The other
maximum penalties remain unchanged, that is, a maximum fine
of up to $250,000.  Restitution as applicable and as agreed
to in the agreement here; special assessment of $100 and then
forfeiture.

       Sir, do you understand the maximum penalties and
the mandatory minimums that I've just reviewed here?

       THE DEFENDANT:  Yes, Your Honor.

       THE COURT:  With respect to forfeiture, sir, let me
review this forfeiture notice included with the information.

       It states that as a result of a foregoing offense
in Count One, the sole count of the criminal information, you

shall forfeit to the United States any visual depiction or book, magazine, periodical, film, videotape or other matter which contains visual depiction which was produced, transported, mailed, shipped or received in violation of the offense.

Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense.

And any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

This pursuant to Title 18, United States Code, Section 2253(a).

The forfeitable property includes, but is not limited to, any and all computers and electronic storage devices containing a visual depiction, that is, a digital and computer image file of a minor engaging in sexually explicit conduct and any accompanying power cords.

If any of this above-described forfeitable property cannot be obtained as a result of any act or omission on your part, the Government is advising you it seeks substitute property up to the value of the forfeitable property.

Sir, do you understand that forfeiture notice?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So is it accurate to say then, Mr.

Soloff, that you understand the sole charge against you and
the criminal information and the penalties authorized by law
as to that alleged offense?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you further understand that if the
Court accepts your guilty plea, you will not be placed on
parole because parole has been abolished in the Federal Court
system?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that a conviction for
this offense will likely result in substantial future
restrictions on where you may live or work and with whom you
may associate?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that if you violate
the conditions of supervised release, you can be given
additional time in prison?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you further understand all of the
possible consequences of pleading guilty that I have
discussed here today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, you were in the courtroom today
and heard and understood when I explained your rights to a
jury trial and your other trial rights under the Constitution

1    and laws of the United States with regard to the charges

2    pending against you; is that correct?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  If you plead guilty and the Court

5    accepts the guilty plea, you will waive or give up those

6    trial rights.  Do you understand that, sir?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Have you discussed with your lawyer the

9    charge in the information, the sole charge in that

10   information, to which you intend to plead guilty?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And, again, you understand that charge,

13   sir?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Now in order for you to be found guilty

16   of that charge, the Government would have to prove at trial

17   by competent evidence and beyond a reasonable doubt that you,

18   in fact, did what the United States Attorney has charged you

19   with doing.  Do you understand that, sir?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And let me just review with you the

22   essential elements of that offense, that is, the things that

23   the Government would have to prove at trial if this charge

24   were to proceed to trial in order to obtain your conviction.

25   The Government would have to prove these things by competent

evidence, by proof beyond a reasonable doubt; and that is --
I'm looking at page 4 of the plea agreement. That on or
about May 19th of 2017 in this district, first, you knowingly
received; second, a visual depiction; third, using means and
facilities of interstate and foreign commerce; fourth, the
production of such visual depiction involved the use of a
minor engaged in sexually explicit conduct; and, fifth, such
visual depiction was of such conduct.

Sir, do you understand that at a trial the
Government would have to prove each of these things by
competent evidence beyond a reasonable doubt?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Sir, are you completely and fully
satisfied with your lawyer's legal services?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you spoken with your lawyer
about sentencing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The Court advises you that in
determining your sentence, the Court must calculate the
applicable advisory Guideline range, consider that range,
consider possible departures or variances under the
guidelines and consider other sentencing factors under 18
U.S.C., Section 3553. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  The Court also advises you that your
2     attorney's calculation of your anticipated sentence is only
3     an estimate and that the estimate is not binding on the Court
4     and that the Court will determine your actual sentence on the
5     date of your sentencing hearing.  Do you understand that?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  The Court further advises you, sir,
8     that any estimate by your lawyer or anyone else as to whether
9     the Court will accept or deny a departure or variance motion
10    or what the advisory Guideline range is not binding on the
11    Court.  Do you understand that, sir?
12         THE DEFENDANT:  Yes, Your Honor.
13         THE COURT:  Mr. Soloff, has anybody threatened you
14    or anyone else or forced you in any way to plead guilty?
15         THE DEFENDANT:  No, your Honor.
16         THE COURT:  Now I've alluded to this plea
17    agreement.  Let me confirm with you, sir.  You have, in fact,
18    entered into a plea agreement between yourself, your counsel
19    and counsel for the Government, correct?
20         THE DEFENDANT:  Yes, Your Honor.
21         THE COURT:  And, Mr. Young, sir, were all formal
22    plea offers by the Government conveyed to Mr. Soloff?
23         MR. YOUNG:  Yes, your Honor.
24         THE COURT:  Very well.  The Court has received and
25    reviewed the original of this plea agreement.  It's entitled

memorandum of plea agreement.  Mr. Soloff, let me direct your

attention to page 8, sir.  Is that your signature above the

typed signature block, William Trevor Soloff?

            THE DEFENDANT:  Yes, Your Honor.

            THE COURT:  Very good.

            And, Mr. Young, sir, that's your signature beneath

Mr. Soloff?

            MR. YOUNG:  Yes, your Honor.

            THE COURT:  Very well.

            And Mr. Smith, is that your signature off to the

left?

            MR. SMITH:  Yes, sir.

            THE COURT:  Very well.  Thank you.

            Mr. Soloff, did you read and discuss the entire

plea agreement with your lawyer before you signed it?

            THE DEFENDANT:  Yes, your Honor.

            THE COURT:  Does this written plea agreement

constitute in its entirety the whole agreement that you have

with the Government in your case?

            THE DEFENDANT:  Yes, Your Honor.

            THE COURT:  Do you understand each term in the plea

agreement?

            THE DEFENDANT:  Yes, Your Honor.

            THE COURT:  Do you understand in this agreement

you're making certain promises to the Government and the

1    Government in exchange is making certain promises to you.  Do

2    you understand that?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  Sir, let me confirm your understanding

5    that there is an appeal waiver provision in this plea

6    agreement.  You understand that, sir?

7                THE DEFENDANT:  Yes, Your Honor.

8                THE COURT:  Let me review that provision with you

9    expressly.  Sir, it appears in paragraph 2(c) and it states

10   you, the defendant, agree to waive knowingly and expressly

11   all rights, conferred by 18 U.S.C., Section 3742, to appeal

12   the conviction and whatever sentence is imposed on any

13   ground, including any issues that relate to the establishment

14   of the advisory Guideline range reserving only the right to

15   appeal from a sentence in excess of the applicable advisory

16   Guideline range that is established at sentencing.  Further

17   to waive all rights to contest the conviction or sentence in

18   any post-conviction proceeding, including one pursuant to 28

19   U.S.C., Section 2255, excepting an appeal or motion based

20   upon grounds of ineffective assistance of counsel or

21   prosecutorial misconduct not known to you the defendant at

22   the time of your guilty plea.  The foregoing appeal waiver

23   does not constitute or trigger a waiver by the United States

24   of any of its rights to appeal provided by law.

25                Sir, do you understand that provision?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  And do you agree to it?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Mr. Soloff, has anybody made any

5   promise that induced you, that is, made you decide to plead

6   guilty, other than promises contained in the plea agreement?

7        THE DEFENDANT:  No, your Honor.

8        THE COURT:  With regard to sentencing, sir, do you

9   understand that if you plead guilty and the Court accepts the

10  guilty plea, the Court would have the authority to sentence

11  you to the statutory maximum sentence permitted by law on

12  each count to which you plead guilty?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  Do you understand that if the Court

15  imposed such a maximum sentence, you would not then be

16  entitled to withdraw your guilty plea?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Sir, has anybody made any promise to

19  you as to what your sentence will be?

20       THE DEFENDANT:  No, your Honor.

21       THE COURT:  Do you understand that the offense to

22  which you have indicated an intention to plead guilty, the

23  sole charge in the criminal information, is a felony offense?

24       THE DEFENDANT:  Yes, Your Honor.

25       THE COURT:  And do you understand the maximum

1  penalty authorized by law for that offense?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand that pleading guilty

4  to this felony offense may deprive you of valuable civil

5  rights?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you understand that if the Court

8  accepts your plea of guilty, you will not later be able to

9  withdraw your guilty plea?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Soloff, have you discussed with

12  your lawyer the matter of waiving your right to indictment by

13  the Grand Jury?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And do you understand your right to

16  indictment by Grand Jury?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Have you been induced to waive

19  indictment by a Grand Jury by any threat --

20          THE DEFENDANT:  No, your Honor.

21          THE COURT:  -- against you or anybody else?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Have you been induced to waive

24  indictment by Grand Jury by any promise other than promises

25  contained in the plea agreement?

1              THE DEFENDANT:  No, your Honor.

2              THE COURT:  Mr. Young, sir, you're not aware of any

3     reason why Mr. Soloff should not waive his right to

4     indictment?

5              MR. YOUNG:  No, your Honor, I'm not.

6              THE COURT:  And, sir, is it, in fact, your

7     intention to waive your right to indictment?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Mr. Soloff, I do have a form here

10    entitled waiver of an indictment and I'm going to pass it

11    down in a moment and have you review it and sign it, assuming

12    you agree with it, and Mr. Young will sign it as well.  I

13    want to review it with you now and make sure you understand

14    it.

15             It states, "I understand that I have been accused

16    of one or more offenses punishable by imprisonment for more

17    than one year, that is, a felony offense.  I was advised in

18    open court of my rights and the nature of the proposed

19    charges against me."

20             Do you understand all of that, sir?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  And it's accurate?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And it goes on to say, "After receiving

25    this advice, I waive my right to prosecution by indictment

1    and consent to prosecution by information."

2              Sir, do you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And is that accurate as well?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Very well.

7              Mr. Young, if you could approach, sir.  Let me pass

8    this down to you and have Mr. Soloff and you, sir, as well

9    sign at the appropriate places.

10             MR. YOUNG:  Thank you.

11      (Attorney Young conferring with the defendant briefly at

12                  counsel table off the record)

13             MR. YOUNG:  May I approach, your Honor?

14             THE COURT:  You may, sir.

15             Mr. Soloff, sir, did you sign this a few seconds

16   ago in open court here, this form entitled, waiver of an

17   indictment?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And now that you've had a chance to see

20   it and discuss it with Mr. Young, let me confirm you do

21   understand this form?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  You do agree, in fact, to waive your

24   right to prosecution by indictment and consent to prosecution

25   by information, correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Very well.  I find that Mr. Soloff's

3     waiver of his right to indictment is knowingly and

4     voluntarily provided.  I will accept this waiver on behalf of

5     the Court.  The Court is now signing at the place provided

6     for its signature.

7          Madam clerk.

8          (The Court providing documents to the clerk)

9          THE COURT:  Mr. Soloff, sir, do you understand that

10    right now as you stand before the Court, you still have the

11    right to plead not guilty to the offense charged against you

12    and to persist in that plea?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you also understand that if you

15    plead not guilty, you would then have the right to a trial by

16    jury and all the other trial rights that I have previously

17    explained?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Do you also understand that if you

20    enter a plea of guilty and the Court accepts that plea, there

21    will be no trial and you will have waived or given up the

22    right to trial as well as the other trial rights that I've

23    explained?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Sir, have you answered all my questions

truthfully today?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you need any more time to think about your plea or to discuss your case with your lawyer?

THE DEFENDANT:  No, your Honor.

THE COURT:  With respect to the sole charge of the criminal information alleging receipt of child pornography, sir, how do you plead?

THE DEFENDANT:  Guilty, your Honor.

THE COURT:  And did you, in fact, commit the offense charged in the criminal information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then you are, in fact, guilty as charged of that offense, correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Very well, sir.  You may be seated.

Mr. Smith, sir, if I could call upon you now to make a presentation concerning the facts the Government would be prepared to prove at trial so that the Court may determine whether there exists an independent factual basis for the defendant's guilty plea.

Sir.

MR. SMITH:  Yes, your Honor.  Thank you.

If this matter would have gone to trial, the Government would have shown that between December 2016 and

June 2017 the defendant's IP address was identified as
sharing and receiving child pornography in chat rooms within
the social media application called Chatstep.  The images
were detected by Chatstep and reported through the National
Center For Missing and Exploited Children.

These cyber tips were received by Apex Police
Department and further investigated by FBI TFO with the Apex
Police Department.  The cyber tips related to the
defendant -- related to the defendant indicate that on four
separate occasions his IP address labeled at 76.211.116.202
uploaded and shared child pornography containing minor
children between the ages of five to eight years old.

In addition to the defendant's IP address, cyber
tips identified the user name of an individual who was
uploading and sharing the files.  Of these numerous cyber
tips that were received, the user name recorded for images
that were shared, specifically on December 12th, 2016, was,
quote, Trevor.  The user name reported for an image shared on
February 1st, 2017, was, quote, TrevorinNC.  A user name
reported for another image shared on February 1st, 2017, was,
quote, Trevor.  A user name recorded for additional images
that were shared on February 28th, 2017, was Trevor S.

With these tips that Apex Police Department had
received, they made contact with AT&T and indicated that --
AT&T indicated that each time a child pornography image was

uploaded, the IP address that was used was owned by the defendant by the name of William Trevor Soloff of 2725 Abruzzo Drive, Apex, North Carolina, 27502. The account listed an e-mail address as well as TSoloff@gmail.com and a phone number as 919-395-8811.

Apex Police Department sought a state search warrant for Mr. Soloff's e-mail address. This e-mail account contained evidence of approximately 15 images of child pornography that were sent through private messages using that e-mail account.

Apex Police Department was able to identify a Facebook account of the defendant, William Trevor Soloff, as well. Apex Police Department subsequently obtained a court order for information from Facebook, Incorporated. Facebook responded to a court order with the following information of registered e-mail addresses such as TSoloff@Facebook.com and TSoloff@gmail.com.

Subsequent to that, Apex Police Department applied for a state search warrant and one was granted. On June 30th, 2017, Apex Police Department and the FBI executed a search warrant on the defendant's residence located at 2725 Abruzzo Drive in Apex, North Carolina, 27502, located inside the Eastern District of North Carolina.

When the Apex Police Department and FBI arrived at Mr. Soloff's home, Mr. Soloff was present with his then wife

and stepdaughter. A non-custodial interview of Mr. Soloff was conducted at his home. Mr. Soloff stated that he lived at the home with his wife and adult stepdaughter. Mr. Soloff admitted to using Chatstep. He admitted that he had encountered child pornography on that site and that he, quote, could have taken an image that he saw during a conversation and shared it.

The interview continued at Mr. Soloff's home where TFO -- or ATF TFO McGonigle read Mr. Soloff his Miranda rights. Mr. Soloff executed a waiver of his Miranda rights. Mr. Soloff stated that he used a desk top computer that was located in his home to access Chatstep and he was the only person in his home who used that computer.

A complete forensic review later yielded evidence that child pornography had existed and was previewed on that computer. The complete forensic review indicated that images were stored also in the external hard drive. The forensic examination subsequently revealed there were 1,910 image files and 96 video files for a total of 2,006 files. When the videos were multiplied out per our sentencing guideline requirements, there was a total of 9,010 images. Mr. Soloff's images include minors under the age of 12, infants and bestiality, your Honor.

THE COURT: Very well. Thank you, sir.

If you could please rise, Mr. Soloff. Based on the

Government's summary and your acknowledgement that you, in fact, are guilty as charged in the criminal information; and because you know your right to a trial and what the maximum possible punishment is; and because you are voluntarily pleading guilty, I will accept your guilty plea as to the sole count of the criminal information and will enter a judgment of guilty on your plea.

Let the record reflect that the Court is satisfied and finds as fact that the plea was freely and voluntarily entered by the defendant. At the time it was entered, the defendant was fully competent and had a full and complete understanding of the nature of the charges and the maximum penalties provided by law. The plea is supported by an independent basis in fact containing each essential element of the offense.

The defendant's plea is accepted and he is adjudged guilty on the sole count of the criminal information.

The Court conditionally approves the plea agreement. Final approval to come at sentencing.

This matter is set for sentencing at the April 29th session of court beginning at 9 a.m. in this courtroom, that is, courtroom one, in the Terry Sanford Federal Building and Courthouse in Raleigh.

Mr. Young, if you could, please, contact probation as promptly as possible after leaving the courtroom today. I

1    know we've got some other business to take care of, but you

2    may well have the opportunity to do that pending the further

3    business this afternoon -- later this afternoon -- but to

4    make arrangements obviously for the interview by probation

5    for the purposes of the pre-sentence report, sir.

6              And as I believe you're aware, Mr. Soloff, your

7    lawyer may be present with you.  For purposes of that

8    interview, that pre-sentence report will assist the Court at

9    the sentencing hearing.  You and your lawyer will have the

10   opportunity to read that report and submit timely objections

11   before that hearing and then you'll also have the

12   opportunity, of course, to address the Court at the

13   sentencing hearing itself.

14             You and -- I should say, the Government's counsel

15   and any victims will, as well, have that same opportunity.

16             Okay.  Let's turn now to the issue of Mr. Soloff's

17   liberty status.

18             Mr. Smith, is the Government seeking his detention

19   at this time?

20             MR. SMITH:  Yes, your Honor, we are seeking his

21   detention and there is a presumption of detention for this

22   issue.

23             THE COURT:  Okay.  Well, what I would -- I'm

24   assuming that's an opposed motion, Mr. Young.

25             MR. YOUNG:  Yes, your Honor, it is.

1          THE COURT:  Okay.  What I would like to do is take

2     that up after we get done these other arraignments so we can

3     proceed with those.  I anticipate we will have time to get to

4     that later this afternoon -- the detention hearing later in

5     the afternoon.  So that's what -- I can't give you a precise

6     time now, but it would come after these other arraignments.

7          Now, there is the issue of Mr. Soloff's custody

8     status pending the detention hearing even though it's later

9     in the afternoon -- later this afternoon.  Does the

10    Government have a position on that?

11         MR. SMITH:  We would ask that he be detained, your

12    Honor.

13         THE COURT:  Do you wish to be heard on that, Mr.

14    Young?

15         MR. YOUNG:  Your Honor, he won't leave the

16    courtroom.  We'll be right here.  I don't know why it's

17    necessary to detain him.

18         THE COURT:  Well, the Bail Reform Act provides that

19    anybody that is subject to a detention hearing, must be kept

20    in custody pending that hearing.  I don't have a full record

21    to work off of at this point.  There is a pretrial services

22    report that has been prepared, I believe, and I have spent a

23    little bit of time with that; but I believe the Court's bound

24    to remand Mr. Soloff to the custody of the United States

25    Marshal pending his detention hearing.  So if he's ultimately

released, it will be a brief period in detention, but I believe the law requires the Court to do that.

I'll direct that Mr. Soloff be remanded pending his detention hearing later this afternoon into the custody of the United States Marshal.

I believe we're concluded for the time being with the Soloff matter.

MR. YOUNG:  I have one more issue, your Honor.

THE COURT:  I'm sorry, sir.  Mr. Young.

MR. YOUNG:  I was going to ask if my local counsel, Ms. Pryor, could be released so she doesn't have to wait for the detention hearing.

THE COURT:  Any objection to that?

MR. SMITH:  No, your Honor.  No objection.

THE COURT:  Very well.  Thank you, ma'am.  You're excused.

MS. PRYOR:  Thank you.

(Hearing suspended at 1:28 p.m.)

(Hearing resumed at 3:04 p.m.)

(Open Court)

THE COURT:  Going to the Soloff matter, I've got another matter I need to attend to at 3:15 that's going to take me until about 4:15.  I know we can't do a detention hearing in 7 minutes or whatever is remaining until 3:15.

I don't know -- I don't know what witnesses are

1   planned.  I assume the Government has an agent to testify.  I

2   don't know whether there's a point in beginning that or just

3   waiting until 4:15.

4           MR. SMITH:  Your Honor, if I may.  The Government

5   does not have a witness present today.  Our agent could not

6   make it.  So I wanted to find out the Court's opinion on

7   proffering the evidence that has already been proffered

8   during the arraignment of the defendant, as well as the

9   defendant's pleading during that arraignment.

10          And the Government also had a few concerns, if the

11  Court felt it was necessary to release the defendant, with

12  the probation report.

13          So again, we don't have a witness.  We suspect this

14  will be a fairly short hearing.

15          THE COURT:  Does the defendant anticipate having

16  any witnesses, Mr. Young?

17          MR. YOUNG:  No, your Honor.  Unless it's necessary

18  to call a third-party custodian.  That would be the only

19  witness.

20          THE COURT:  Okay.  Well, I mean, frankly my

21  inclination would be to take the break -- and I apologize, I

22  have just got another matter I need to attend to -- just take

23  a break until 4:15 and then just address this matter at that

24  time.

25          MR. SMITH:  That's fine with us, your Honor.  Thank

1　you.

2　　　　　THE COURT:　Okay.　Very well.　We'll take a recess

3　then until 4:15.

4　　　　　　　　　(Recess commencing at 3:05 p.m.)

5　　　(The defendant, William Trevor Soloff, escorted into the

6　　　　　　　　　　courtroom at 4:22 p.m.)

7　　　　　　　　(Recess concluding at 4:50 p.m.)

8　　　　　　　　　　　(Open Court)

9　　　　　THE COURT:　We're resumed here in the case of

10　United States versus William Trevor Soloff.

11　　　　　We're here for a detention hearing that follows Mr.

12　Soloff's arraignment and plea hearing in which he pled guilty

13　to a charge of receipt of child pornography.

14　　　　　Let me -- I want to review just the Court's

15　understanding at the outset here of the standard which

16　applies to Mr. Soloff's release.　The crime to which he has

17　pled guilty is, by my understanding, defined under law as a

18　crime of violence.　It's in Chapter 110 and the definition of

19　crime of violence is found at 18 U.S.C., Section

20　3156(a)(4)(C) and that includes crimes in Chapter 110.

21　　　　　Then when we look to Chapter -- well, actually,

22　Section 3145 -- well, this is an offense that falls within

23　subparagraph (a), (b) or (c), subsection (f)(1) of Section

24　3142, and what that means is that the applicable standard

25　with respect to his liberty status is set forth in Section

3145(c) and it states that a person subject to detention
pursuant to Section 3143(a)(2) and who meets the conditions
of release set forth in Section 3143(a)(1), may be ordered
released under appropriate conditions by the judicial officer
if it's clearly shown that there are exceptional reasons why
such person's detention would not be appropriate.

So one of the prongs is it must be clearly shown
that there are exceptional reasons why such person's
detention would not be appropriate.

And then the standard that is referred to in
3143(1) is that the person must be detained unless the
judicial officer finds by clear and convincing evidence that
the person is not likely to flee or pose a danger to the
safety of any other person or the community if released.  And
that contemplates release on conditions that the Court sets.

So that's the Court's understanding of the
applicable standards.  So it's essentially a two-prong test.
The Court must find by clear and convincing evidence that the
defendant is not likely to flee or pose a danger to the
safety of any other person or the community if released on
conditions; and then secondly, it is clearly shown that there
are exceptional reasons why detention would not be
appropriate.

And I believe the burden rests on the defendant to
meet this standard.

1          So my understanding is, Mr. Young, that Mr. Soloff

2    is proposing a third party custodian.

3          MR. YOUNG:  Yes, your Honor.  We do have a third

4    party custodian.

5          THE COURT:  Very well.

6          If you could call that person to testify, that will

7    give the Court an opportunity to assess that person and give

8    the Government the opportunity to cross-examine as well.

9          MR. YOUNG:  Okay.  We'll call Ms. Tanya Stockton to

10   the stand.

11                      **TANYA FAYE STOCKTON**

12         having been duly sworn, testified as follows:

13         THE WITNESS:  I do.

14         THE CLERK:  Thank you, ma'am.  Please have a seat.

15         THE COURT REPORTER:  Could you state your full

16   name.

17         THE WITNESS:  Tanya Faye Stockton.

18         THE COURT REPORTER:  Could you please spell your

19   name.

20         THE WITNESS:  T-A-N-Y-A  F-A-Y-E  S-T-O-C-K-T-O-N.

21         THE COURT:  Mr. Young, sir, you may proceed.  Thank

22   you.

23         MR. YOUNG:  Thank you.

24         THE COURT:  You may be seated.

25   ///

**DIRECT EXAMINATION**

BY MR. YOUNG:

Q.    Good afternoon, Ms. Stockton.

A.    Good afternoon.

Q.    First of all, I'm going to ask you, would you be willing to be a third party custodian for Mr. Soloff?

A.    Absolutely.

Q.    And currently you guys live together?

A.    Yes.

Q.    And how long have you been living together?

A.    We have been living together since June of 2018.

Q.    Okay.  And what kind of work do you do?

A.    I am self-employed.  I do a variety of things, mainly website content and marketing for several start-up type companies and a nonprofit.

Q.    Okay.  And do you work from home or outside the home?

A.    From home.

Q.    Okay.  So would you be able to monitor Mr. Soloff at times that he would need monitoring?

A.    Yes.

Q.    Okay.  And if Mr. Soloff was granted release and conditions were set forth by the Judge, would you be willing to report violations of those conditions to U.S. Probation?

A.    Yes.

1       Q.   Okay.  And do you guys currently have any weapons

2  in the home?

3       A.   Pardon?

4       Q.   Do you guys have any weapons in the home?

5       A.   No.

6       Q.   Okay.

7            MR. YOUNG:  That's all I have for Ms. Stockton,

8  your Honor.

9            THE COURT:  Very well.  Thank you.

10           Mr. Smith, sir.

11                    **<u>CROSS-EXAMINATION</u>**

12  BY MR. SMITH:

13      Q.   So you work from home, correct?

14      A.   Yes.

15      Q.   And you stated you work in website content and

16  marketing?

17      A.   Yes.

18      Q.   So would it be fair to say you use a computer

19  pretty often?

20      A.   Yes.

21      Q.   Is all your work done on a computer?

22      A.   Mainly.  Sometimes I do old school and I make

23  notes.

24      Q.   How many computers do you have in the home?

25      A.   I have one Mac.

1      Q.   Is that password protected?

2      A.   Yes.

3      Q.   Does the defendant know your password?

4      A.   No.

5      Q.   Does he ever use your computer?

6      A.   No.

7      Q.   When was the last time he used your computer?

8      A.   Last night.

9      Q.   What was he doing on the computer last --

10     A.   No.  I used my computer last night.

11     Q.   When was the last time the defendant used your

12 computer?

13     A.   A few months ago I asked him to trouble shoot

14 something because his background is programming.

15     Q.   You have to excuse me, I'm not a big computer guy.

16 So what's trouble shooting?

17     A.   I had -- my Mac is an older Mac and it kept

18 spinning so I was having a hard drive issue.

19     Q.   And the defendant has some knowledge in how to

20 repair hard drives and trouble shooting?

21     A.   Yes.

22     Q.   Would you say that he's pretty computer savvy?

23     A.   Not so much with the Mac, but pretty much with what

24 he does at work I'm assuming.

25     Q.   What does he do at work?

1          A.    He's a programmer.

2          Q.    Do you have any iPads or tablets in your home?

3          A.    Yes.  I rarely use it so I'm not even sure it's on

4     at this time, but sometimes I play games on it.

5          Q.    Does Mr. Soloff have any computers in the home?

6          A.    No.

7          Q.    Does he have any external hard drives in the home?

8          A.    He has a hard drive and -- that he used to work

9     from home and the monitor broke so it has not been in use for

10    quite sometime.

11         Q.    Does Mr. Soloff use a computer in your home often?

12         A.    No.

13         Q.    Are you savvy in technology and computers?

14         A.    For my age I would say so.  I can get my way around

15    because my background has been publishing so I've had to

16    learn more than some people at this point in life.

17         Q.    And if you were granted to be a third party

18    custodian for the defendant, would you be able to monitor his

19    computer and electronic use?

20         A.    Yes.

21         Q.    How would you do that?

22         A.    Well, he doesn't have a computer himself or an iPad

23    and I know what my history is and whether he would use my

24    computer or not because I'm home and I work from home.

25         Q.    You testified before that he's pretty savvy with

1  computers though, correct?

2       A.   Yes.

3       Q.   And you've asked him for help in the past with your

4  computer?

5       A.   Yes.

6       Q.   So how would you know every time he's on your

7  computer what he's doing on your computer if he's smarter

8  than you when it comes to computers?

9       A.   If I'm home, I'm aware of his use of my computer

10 and when.

11      Q.   What about when you're asleep or not home?

12      A.   We always go to bed together.

13      Q.   What about when you're not home?

14      A.   I would know.  I would see history.

15      Q.   Have you ever deleted history from a computer

16 before?

17      A.   On my own computer, yes.

18      Q.   So you know that's a possible avenue to go down

19 when using a computer.  You can delete history on a computer,

20 correct?

21      A.   Yes.

22      Q.   So how would you know if the defendant deleted any

23 history on your computer if he used it?

24      A.   We are with each other all the time when -- he is

25 not home -- he's not home as much as I am.  He works long

hours, he goes to multiple meetings; and I am generally

always home when he's home.

Q.    At his job does he use a computer?

A.    Yes.

Q.    Does he ever bring his work computer home with him?

A.    He did during a storm, within the last, I don't

know, six months or so but generally his work is done at his

work office.

Q.    Does the defendant have a smart phone?

A.    I think he has a Samsung, but I'm not sure.  I'm an

iPhone person.

Q.    If you were a third party custodian for the

defendant, how would you monitor his computer use?

A.    He has no computer and --

Q.    How would you --

A.    -- again, when he is home, I am home.

Q.    When did you first learn about the criminal conduct

that the defendant pled guilty to today?

A.    In January of 2018.

Q.    And when did you meet the defendant?

A.    In October of 2017.

Q.    And that didn't alarm you that months after meeting

him, you didn't know who he really was?

A.    I knew he was one of the kindest, most gentlest,

caring people I had ever met and I understand, with age and

1   wisdom, that people can and do make mistakes; but the fact
2   that he was in recovery and more committed to recovery than
3   anyone I've ever known, spoke volumes to me.  And, no, it
4   didn't scare me.  I respected -- I shared with him after he
5   shared with me, how much I admired and respected him for
6   being in recovery.
7        Q.   So you respect him for receiving child porn?
8        A.   I did not say that.  I said I respected him for
9   being in recovery.
10       Q.   Recovery from --
11       A.   From his addiction.
12       Q.   What's his addiction to your knowledge?
13       A.   Sexual addiction.
14       Q.   Sexual addiction to what?
15       A.   To online pornography.
16       Q.   Of what, what type of pornography?
17       A.   Online pornography in general.
18       Q.   Have you ever seen the defendant use any illegal
19   narcotics or drugs?
20       A.   No.
21       Q.   Do you use any prescription medications yourself?
22       A.   Yes, I do.
23       Q.   And what prescription medications do you use?
24       A.   High blood pressure, thyroidism, and I am on an
25   anti-cholesterol medicine as well.

1        Q.    Now, outside of your job, do you travel much?

2        A.    No, I do not unless we travel together.

3        Q.    Do you belong to any clubs or organizations that

4   would take you away from the home?

5        A.    No, I do not.

6        Q.    Do you have any family members that live outside

7   the state that you regularly go visit?

8        A.    Unfortunately not.  I've lost most of my family.

9        Q.    When was the last time to your knowledge that the

10  defendant purchased any computer-based software or computer

11  programs?

12       A.    Not since I've known him, to my knowledge.

13       Q.    And besides you two, who else lives in the home?

14       A.    Just the two of us and we have a cat.

15       Q.    Do any other friends or family members stay the

16  night ever or any -- at any point?

17       A.    No.  Unfortunately, again, I have very little

18  family.  And my son did spend the night with us a night or

19  two and when his parents come in town, they stay in a hotel

20  down the street.

21       Q.    So do you believe you can fully be aware of every

22  single time the defendant accesses a computer or electronic

23  device?

24       A.    Yes.

25       Q.    And do you believe that the defendant would ever

```
1    hide child pornography from you?
2         A.   Never.
3         Q.   And you testified that the external -- that the
4    hard drive that the defendant has at the home, he doesn't
5    currently use that, correct?
6         A.   That's correct.
7         Q.   Do you know if that's still working?
8         A.   I do not know.
9         Q.   Do you currently have a land line in your home?
10        A.   We just installed one.
11        Q.   When was it installed?
12        A.   Yesterday.
13        Q.   What time yesterday?
14        A.   Last night when we got home from dinner.
15        Q.   About what time?
16        A.   Maybe around 10 p.m.
17        Q.   Wow.  Installation came to your home at 10 p.m.
18   last night, is that what you're saying?
19        A.   An installer did not come.  We already had the set
20   up.  We just physically put the phone in place.
21        Q.   Okay.  And who is your provider?
22        A.   For that phone service?
23        Q.   Yeah, for your land line service.
24        A.   I don't know since it just occurred.  I'm sorry.
25        Q.   If it just occurred yesterday, shouldn't you know
```

1    who your provider is?

2           A.    It's written down at home.

3           Q.    So you have no idea who installed --

4           A.    And you can ask Trevor.

5           Q.    You have no idea who installed the land line into

6    your home yesterday?

7           A.    It -- a person did not come and install it.

8           Q.    How did it get set up?

9           A.    I'm not sure.  That technology is above my level of

10   comprehension.

11          Q.    Were you home yesterday when it was installed?

12          A.    Yes, but an installer again did not come to our

13   home --

14          Q.    So how --

15          A.    -- to set up the land line.  It was -- it must have

16   been some sort of application that I'm not familiar with, but

17   we did test it out and it did ring.

18          Q.    Do you have the cordless phone or is it a corded

19   phone in your home?

20          A.    It's cordless.

21          Q.    You just testified that again technology is above

22   you -- the technology is above your head, is that what you

23   were saying?

24          A.    I'm saying that I have a degree of technology and

25   I'm somewhat savvy when it comes to publishing graphic

design, word processing, Powerpoint.  However, I do not know
about all the new apps and the technology like Alexa or phone
apps that don't need an installer and that type of thing.

Q.   How much knowledge do you have in computer search
or analysis software?

A.   I have no experience in analysis software.
Computer search, you know, medium.  I can find what I need
when I Google.

Q.   What's the extent of your knowledge in copying data
from different devices or external hard drives?

A.   Very little.

Q.   Do you have any background or any knowledge in
computer-based counter-forensic tools?

A.   I do not.

Q.   What about any background or knowledge related to
encryption data in computers?

A.   I do not.

Q.   So it sounds like you have somewhat of a background
in computers, but with a lot of the -- with a lot of the
tools and programs that the probation office has recommended
for the defendant, you don't seem to have a background or
knowledge in any of those areas, do you?

A.   I'm sorry, could you repeat that in a way I could
understand.

Q.   United States Probation has recommended in their

pre-sentence report that the defendant should consent to
installations and software programs and that you would allow
probation -- you should allow probation officers to monitor
computer use on any computer, that the defendant must not
possess, use or control any computer-based counter-forensic
tools, defendant must not have, use or have installed any
programs specifically or solely designed to encrypt data,
files, folders, volumes of any media.  You don't have
background or knowledge in how these systems work for
computers, do you?

   A.  That is correct.  Are you asking me if I would be
willing to have the type of software probation would require
on mine --

   Q.  No, I'm not asking you that.

   A.  Because I was going to say yes --

   Q.  You don't have a background in encryption data or
counter-forensic tools when it comes to a computer?

   A.  No.  My background is publishing so basically I use
publishing tools, LinkedIn and social media on behalf of the
authors I represented.

   Q.  So you would never know if the defendant downloaded
counter-forensic tools on your computer to download and view
child pornography, would you?

   A.  I would know if the defendant was on my computer.

     MR. SMITH:  Your Honor, I have no further

1    questions.

2              THE COURT:  Thank you.

3              Mr. Young, sir.

4              MR. YOUNG:  Yes, your Honor.  Just a couple

5    questions.

6                    **REDIRECT EXAMINATION**

7    BY MR. YOUNG:

8         Q.   Ms. Stockton, you said your computer is password

9    protected?

10        A.   Yes.

11        Q.   And since you and the defendant have been together

12   since January 2018, a little bit over a year, how many times

13   have you seen him on your computer?

14        A.   Maybe three times and that's only when I've asked

15   him for assistance.

16        Q.   And you spoke to United States Probation, correct?

17        A.   That's correct.

18        Q.   And when you spoke to them, did they tell you the

19   things you may need to do to be a third party custodian for

20   Mr. Soloff?

21        A.   They mentioned the home line.  They didn't mention

22   anything else.  And, of course, I'm open to anything that may

23   be needed.

24        Q.   And you didn't tell them that you were a computer

25   scientist, did you?

1       A.    No, I'm not.

2       Q.    And that's not your background?

3       A.    No, it's not.  I told them that I work from home.

4       Q.    But you would be willing to comply with everything

5  that the Court asked you to comply with and let the Court

6  know if Mr. Soloff violates anything that he shouldn't be

7  doing that you know about, right?

8       A.    Absolutely on both counts.

9       Q.    Okay.

10            MR. YOUNG:  I don't have any further questions,

11  your Honor.

12            THE COURT:  Thank you.

13            Mr. Smith, sir, any follow-up to those questions?

14            MR. SMITH:  No, your Honor.

15            THE COURT:  Thank you, ma'am.

16            THE WITNESS:  Thank you, your Honor.

17                      (Witness Excused)

18            THE COURT:  Mr. Young, is that the evidence for the

19  defendant on the detention motion?

20            MR. YOUNG:  Yes, your Honor.

21            THE COURT:  Very well.  Thank you.

22            Mr. Smith, you're welcome -- we talked early about

23  a proffer.  I know that you alluded to the evidence that was

24  proffered as part of the showing of the factual basis for the

25  plea, but that's fine.  I would like to have you recite that

1  into the record and, of course, you're welcome to present
2  other evidence as you deem appropriate.
3          MR. SMITH:  Thank you, your Honor.
4          As I alluded to earlier, our agent could not be
5  here to testify today.  Your Honor, it's the Government's
6  contention at this point that the defense has not provided
7  the presumption for detention in this matter.  Your Honor,
8  the defense has before it a third party custodian here --
9          THE COURT:  At this point, Mr. Smith, I'm
10 interested in the proffer of the evidence that you alluded to
11 was proffered at the arraignment -- and I'm going to rely on
12 my memory for that and I also want the record of this
13 discrete proceeding to be complete.  So if you want to
14 proffer evidence for the Court to consider on the detention
15 motion, you need to make that proffer.
16         MR. SMITH:  Yes, your Honor.  I can do that now.
17         The Government would like to proffer evidence at
18 this time, your Honor.
19         THE COURT:  Very well, sir.
20         MR. SMITH:  Your Honor, between December 2016 and
21 June 2017, the defendant, Mr. Soloff's, IP address was
22 identified as sharing and receiving child pornography in
23 multiple chat rooms within the social media application
24 called Chatstep.  The images were detected by Chatstep and
25 reported through The National Center For Missing and

Exploited Children by use of a cyber tip program.  The cyber tips were received by the Apex Police Department and further investigated by FBI TFO Josh McGonigle at the Apex Police Department.

The cyber tips indicated that on separate occasions, an IP address known as 76.211.116.202 uploaded and shared child pornography containing five to eight-year-old children.

In addition to the IP address, the cyber tips identified the user name of the individual who's uploading and sharing files.  Of the four cyber tips that were received, the user name recorded for the images that were shared on the date of December 12, 2016 was, quote, Trevor.  User name recorded for the images that were shared and received on February 1st, 2017, was TrevorinNC.  The user name recorded for another image that was shared and received on February the 1st 2017 was, quote, Trevor.  And the user name recorded for an image shared on February the 28th, 2017 was, quote, Trevor S.

Your Honor, the Apex Police Department received information from AT&T indicating that at each time an image was uploaded and received, the IP address used was an account owned by Mr. William Trevor Soloff of 2725 Abruzzo Drive, Apex, North Carolina, 27502, within the Eastern District of North Carolina.

1      The Apex Police Department also sought a state
2 search warrant for Mr. Soloff's e-mail address.  The account
3 contained evidence of approximately 15 images of child
4 pornography that were sent to private messages.  The Apex
5 Police Department was able to identify a Facebook account of
6 the defendant, Mr. William Trevor Soloff.
7      The Apex Police Department subsequently obtained a
8 court order for information from Facebook, Incorporated.
9 Facebook responded to the court -- to the court order with
10 the following information:  That a registered e-mail address
11 is -- that they had on file were TSoloff@Facebook.com and
12 TSoloff@gmail.com.
13      Apex Police Department also applied for a search
14 warrant on June 29th, 2017.  On June 30th, 2017, the next
15 day, the Apex Police Department and the FBI executed a search
16 of Mr. Soloff's residence again located at 2725 Abruzzo
17 Drive, Apex, North Carolina.
18      When the Apex Police Department/FBI arrived at Mr.
19 Soloff's home, Mr. Soloff was present along with his then
20 wife and stepdaughter.  An interview of Mr. Soloff was
21 conducted at his home.  He stated that he lives at the home
22 with his wife and adult stepdaughter.  Mr. Soloff admitted to
23 law enforcement that he used Chatstep and that he encountered
24 child pornography on that site and he could have taken an
25 image that he saw during a conversation and he shared it.

1        The interview continued at Mr. Soloff's home where

2   TFO McGonigle read Mr. Soloff his Miranda rights and Mr.

3   Soloff executed a waiver of those rights.  Mr. Soloff told

4   law enforcement that he only used a desk top computer that

5   was downstairs in his office to access Chatstep and that he

6   was the only person in his home that used that particular

7   computer.

8        A completed forensic review yielded evidence that

9   child pornography had existed on the previewed computer.  The

10  preview indicated that images were stored on an external hard

11  drive as well.  Forensic examination conducted on behalf of

12  the FBI revealed that there were 1,910 image files and 96

13  video files for a total of 2,006 files.  When the videos were

14  multiplied out per the sentencing guideline requirements,

15  final calculation is 9,110 images.  Mr. Soloff's images also

16  include minors under 12, infants, S&M and bestiality.

17       That concludes the Government's proffer, your

18  Honor.

19       At this point the Government would ask if your

20  Honor would like the Government to conclude with its closing

21  arguments or to wait?

22       THE COURT:  Thank you, sir.  Just give me one

23  moment.

24       Does the Government -- is the Government aware --

25  and I can ask probation -- aware of these -- the basis for

1   the pending state charges against Mr. Soloff that are

2   mentioned in the pretrial services report?  According to the

3   pretrial services report, he's been charged with ten counts

4   of felonious second degree sexual exploitation of a minor and

5   those are for offenses occurring -- going from December 12th

6   of 2016 up until February 28th of 2017.

7           MR. SMITH:  Your Honor, to my knowledge those

8   charges are related to this instant offense.  At this point I

9   know they are pending and I am -- again, I apologize for the

10  agent not being here.  I'm not sure if some of those charges

11  relate to activities that will remain pending past our

12  Federal investigation here.

13          THE COURT:  Okay.  Okay.  Very good.

14          I'm happy to hear your argument at this time, Mr.

15  Smith.

16          And then, of course, the defendant will have an

17  opportunity to argue.  We can go back and forth as

18  appropriate.

19          So Mr. Smith.

20          MR. SMITH:  Thank you, your Honor.

21          Your Honor, to start, this pre-sentence report was

22  written and filed before the defendant had pled guilty to a

23  count of receiving child pornography.  The defendant does not

24  have obviously a criminal history.  The defendant is a

25  life-long resident of Raleigh, but the charges that he pled

guilty to today are extremely serious.  As I stated earlier,
the defendant was found in possession of a total of 9,110
images of child pornography.

The defendant has a long work history and
ironically that work history is based in computers.  Per the
pre-sentence report, the defendant has extensive knowledge in
computer engineering, computer software, computer programming
and software developing.  The defendant's current job is
based around computers.  The conditions that probation had
recommended for the defendant in terms of monitoring for a
third party, in terms of compliance with supervision for
computers and for allowing probation to install -- install
software tools on his computer, conditions that the defendant
must not purchase or use any other computers or electronic
devices.  Your Honor, the Government would argue that none of
those conditions are strong enough to protect the community
from the defendant accessing computers, downloading and
receiving, engaging in child pornography.

This is not a case of the defendant in possession
of one image of child pornography or sending one image of
child pornography.  The defendant had done this for an
extensive period of time.

As the pretrial services report does indicate, he
has issues with mental health.  He's pled guilty to a charge
of receipt of child pornography.  Again, a serious charge.

1 There are victims in this case that are spread around the
2 country that make this charge even more serious than what it
3 says on this paper.

4 Your Honor, the Government is extremely concerned
5 that the defendant will be able to access computers without
6 the knowledge of the United States Probation, without the
7 knowledge of the third party custodian.

8 As we heard earlier the third party custodian seems
9 to be a very wonderful and caring individual, and I do
10 commend her for coming in here today, but the fact of the
11 matter is she's not computer savvy. She stated that herself.
12 It's the Government's contention she's not going to know
13 every time the defendant accesses a computer. She's not
14 going to know every time the defendant is on a computer if
15 she's asleep.

16 Again, his work is based around computers. This
17 man is smarter than -- and I hate to say this -- everyone
18 else in this room when it comes to computers. This is what
19 he's done for his career. He did this at the highest level
20 representing the United States in our military. He went from
21 that to doing it in the private sector. He's made a lot of
22 money doing this.

23 The defendant poses, in our opinion, a severe risk
24 of danger to the community when it comes to receiving child
25 pornography, your Honor, and there are no conditions or

1  combinations of conditions that will assure the safety of the

2  community and we would ask for his detention at this time,

3  your Honor.

4          THE COURT:  Thank you, sir.

5          Mr. Young.

6          MR. YOUNG:  Thank you, your Honor.

7          Your Honor, Mr. Soloff was arrested in June of 2017

8  on a charges that you mentioned.  He was arrested in state

9  court.  He was in jail a couple of days and made bond.  He's

10 been out on bond for -- it will be 19 months next month, your

11 Honor.

12         When I was first brought into the case in -- this

13 past July, I contacted the United States Attorney's Office.

14 He had not been charged yet, but they were going to charge

15 him based off the charges that you're looking at, the state

16 charges.  At that time they knew that he was out on bond.  He

17 had not violated, he had not done anything out of the way to

18 make his state charges or his state bond be revoked.

19         As a matter of fact, he has -- this has probably

20 been one of the most consistent efforts of rehabilitation

21 that I have seen since I've been practicing.  Mr. Soloff is

22 an admitted sex addict.  He's in SAA, which is sex addicts

23 anonymous.  He goes to seven meetings a month.  He goes to --

24 a week, I'm sorry.  Seven meetings a week.  Since he was

25 arrested he's been to over 350 meetings.  He has a sponsor

who he meets with weekly.  When he meets with the sponsor, he
has on his mobile device, on his phone, he has accountable
software where if anything comes up that shouldn't be there,
his sponsor knows that he's done something.  Not only does he
have a sponsor, but I would argue not only will he not harm
anybody, he's actually helping people.  He's become a sponsor
himself because he goes so much; and not only does he go to
the meetings, he helps these men out with other things.

He lets people know -- like he let Ms. Stockton
know the mistakes he's made.  Wasn't easy to meet a woman and
say three months later, I'm in trouble for child porn.  He
went to a 45-day program, The Gratitude Program, down in
Hattiesburg, Mississippi.  45 days.  Cost his family about
$21,000.  That program was from February 8th until
March 30th.

He also goes to a therapist weekly who used to be
an addict of alcohol herself so she works with addicts.  He
sees her weekly.  There is time when I need to get with him
and he says, can you call back, I'm with my therapist.  So he
goes weekly.

He's going to church weekly.  He's been to three
semi-annual sex addict retreats.  He's done two sex addict
workshops, another one day workshop held by Robert Wise,
who's a sex addiction specialist.

He does weekly conference calls also with his -- he

1  calls them his brothers -- his brothers in SAA.

2  This is his rehabilitation, his treatment. He

3  knows that he had a problem. He knows that he had a problem

4  and he looks to address it right from the time he was let out

5  on bond in the state.

6  He's volunteered for his church. He does

7  programming for another nonprofit. His background is in

8  computers and his job knows exactly what's going on. They

9  know exactly what's going on today. They actually hoped that

10  he would be released this morning so he could come back to

11  work this afternoon. He's not -- he did lose the job when he

12  got arrested, but he's been rehired by somebody. He does

13  good work and she wanted him to come back to work this

14  afternoon. He also has a very favorable report from Robert

15  Craft who says that he doesn't seem like the type of person

16  psychologically that would reoffend.

17  Mr. Soloff knows that these are really serious

18  charges. He knows they are very serious charges and he knows

19  at some point he will have to pay for what he's done, but

20  what we ask the Court is to allow him to stay out to continue

21  to get treatment and to continue working his rehabilitation.

22  For him to go sit in Wake County jail, or Franklinton,

23  whatever jail is holding federal detainees, would be

24  counterproductive because he's working.

25  His plan right now -- when he gets in the federal

system there may be things for him to do to continue his rehabilitation. If he goes to jail right here in the State of North Carolina, Eastern District in North Carolina, there is not going to be anything for that. These things that he's doing, he hadn't done them and stopped.

When I met him it was because I could tell he was trying to help himself. He knew exactly what he did, he knew it was bad. He didn't want to argue that a lot of the images are going to be duplicates. He said, you know what, I did it, I made a mistake. He sat down with the agent when he first came to his house with no lawyer. He told the agent, hey, the stuff is here, the stuff is here. He didn't hide it. He didn't say, well, I got a bunch of stuff hidden away. It's on hard drives on my computer downstairs. That's where I got it from.

You can listen to the Government. He was chatting under his own name. Trevor, Trevor S, Trevor in North Carolina.

So he knows what he did was wrong. He knows exactly what he did was wrong, but he had a very favorable interview with U.S. Probation and there is some conditions that he could get out on.

I mean, he's working every day. He's going to treatment. He has family support. His mother is here and his stepfather is here, his girlfriend is here. They travel.

1    He has family support.

2            And I think that this is a situation where -- you

3    used the terminology extraordinary.  I think that this is

4    extraordinary.  I haven't seen many clients who have done so

5    much to not -- right their wrongs, but he's not trying to do

6    that but help himself and put himself in a light more

7    favorable to the court.  He was doing all this.

8            We worked -- I got in this case in July.  He wasn't

9    formally charged until -- I mean, he was arraigned today.

10   When we went to U.S. Probation, U.S. Probation knew what we

11   were coming to do, we were coming to plead guilty, and then

12   we want to be heard on bond.  So it wasn't like he thought,

13   oh, he's going to get indicted and then get arrested and have

14   a bond hearing that's now how we want to do it.  We wanted to

15   do what was more economical for the Court and we wanted to

16   say, we'll plead guilty to a bill of information; but I felt

17   like with the things that he was doing, you know, under 18

18   U.S.C., 3143(a) I felt like there was clear and convincing

19   evidence that he's doing enough; that I don't think that it

20   would be too much harm if he's out for another 90 to

21   120 days.  He's not harming anybody.  He hadn't looked up

22   porn on Ms. Stockton's computer.  His computers are visible

23   to everybody at work where he's situated.  His boss can see

24   what's on his computer screen.

25           He's a computer engineer.  He can't apologize for

what he chose to do in life but he has made mistakes; but
there is definitely clear and convincing evidence that would
allow your Honor to allow him to get out and go back to work
and go back to treatment tomorrow.

THE COURT:  Okay.  Very well.  Thank you, sir.

MR. YOUNG:  Thank you.

THE COURT:  Mr. Smith, any final thoughts?

MR. SMITH:  Just one, your Honor.

As defense alluded to, this is a serious matter.
Defendant is facing, by my calculations, 151 to 188 months in
prison.  And as we've seen in cases before, seen in the
statute that alludes to a flight risk as well.  It's a lot of
time defendant's facing in the federal prison.  This is a
very serious matter against the defendant who has access to
computers, software and technology.

We would ask for him to be detained at this point,
your Honor.

THE COURT:  Thank you, sir.

I am going to take few minutes to consider this
matter, folks.  I would ask the probation officer to join me.
We'll take a brief recess.

(Recess at 5:35 p.m. to 6:06 p.m.)

(Open Court)

THE COURT:  Folks, I can tell you I do need to
sleep on this one.  There is some unique aspects to this that

are going to require further consideration.  I would like to
resume -- schedule a time tomorrow to announce my ruling on
it and I can be available at 9:30 tomorrow morning.  I've got
a settlement conference starting at 10, but I'm happy to
interrupt that if that 9:30 setting isn't one that works for
counsel.

            MR. SMITH:  Your Honor, 9:30 works for our
schedule.

            THE COURT:  Mr. Young.

            MR. YOUNG:  Sounds good, your Honor.

            MR. SMITH:  Your Honor, will that be in this
courtroom or --

            THE COURT:  No, I would -- I want to free this up
for Judge Dever.  It would be in the sixth floor courtroom.
And I'm happy to wait -- I can repeat this in Mr. Soloff's
presence but I wanted to alert you gentlemen as to what --
how the court was proceeding.

            MR. SMITH:  Thank you, your Honor.  That's fine
with us.

       (The defendant, William Trevor Soloff, escorted into the
                    courtroom at 6:07 p.m.)

            THE COURT:  Mr. Soloff, I've informed counsel I do
need more time to consider this matter.  There are unique
aspects to this case that really do need further
consideration.  I don't want to rush to judgment because it's

1    a very important issue.

2         We will reconvene at 9:30 tomorrow, not in this

3    courtroom but on the sixth floor courtroom, and I'll announce

4    my ruling at that time.

5         Mr. Young, anything further on behalf of Mr. Soloff

6    for today?

7         MR. YOUNG:  No, your Honor.

8         THE COURT:  Thank you, sir.

9         Mr. Smith, sir, anything further for the Government

10   at this time?

11        MR. SMITH:  No, your Honor.  Thank you.

12        THE COURT:  Thank you, gentlemen.

13        The Court will be adjourned.

14        I remand Mr. Soloff to custody of the United States

15   Marshal.

16

17              (Hearing adjourned at 6:09 p.m.)

18

19

20

21

22

23

24

25

```
 1                UNITED STATES DISTRICT COURT

 2               EASTERN DISTRICT OF NORTH CAROLINA

 3

 4              CERTIFICATE OF OFFICIAL REPORTER

 5

 6              I, Michelle A. McGirr, RPR, CRR, CRC, Federal

 7   Official Court Reporter, in and for the United States

 8   District Court for the Eastern District of North Carolina, do

 9   hereby certify that pursuant to Section 753, Title 28, United

10   States Code, that the foregoing is a true and accurate

11   transcript of my stenographically reported proceedings held

12   in the above-entitled matter and that the transcript page

13   format is in conformance with the regulations of the Judicial

14   Conference of the United States.

15

16   Dated this 30th day of October, 2019

17

18                                /s/ Michelle A. McGirr
                                  MICHELLE A. McGIRR
19                                RPR, CRR, CRC
                                  U.S. Official Court Reporter
20

21

22

23

24

25
```